# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

T.L., a minor child, by and through
his Parents and Natural Guardians,
B.A.P. and M.R.L.,

Civil File No: 13-2693

            Plaintiffs,

**VERIFIED COMPLAINT**

**DEMAND FOR JURY TRIAL**

v.

Minnesota State High School League,
David Stead, individually and in his
official capacity, Shakopee Public Schools,
John Bezak individually and in his
official capacity, and John Janke,
individually and in his official capacity,

            Defendants.

---

For their Complaint, Plaintiffs T.L. ("T.L."), and his parents and natural guardians, B.A.P. ("B.A.P") and M.R.L. ("M.R.L.")(collectively "Plaintiffs") state as follows:

## I. PRELIMINARY STATEMENT

1.     This is an action for injunctive relief, declaratory relief, and monetary damages arising out of the injury and damage sustained by T.L. as a result of the unconstitutional vagueness and arbitrary application of the Minnesota State High School League Bylaws and the denial of his Fourteenth Amendment right to due process by which to challenge disciplinary decisions affecting his participation in school athletics. Under Minnesota law, athletic eligibility is a constitutionally protected property right, part and parcel of a student's right to an education, which cannot be taken away without due process. Due to the vagueness, lack of notice and arbitrary application of the Bylaws

by all Defendants, T.L., who is eligible to receive a division one college scholarship based on his participation in wrestling, has been denied his constitutionally protected right without due process. Moreover, the actions of Defendant Shakopee Public Schools, Defendant John Bezak and Defendant John Janke ("Shakopee Defendants") violated T.L.'s First Amendment right to free speech and his privacy in his Twitter, email and/or Facebook communications without his knowledge or consent, privacy in his juvenile records, and his Fourth Amendment right to be free from unlawful seizure through interrogations by public school officials without a Tennesen warning or the knowledge and consent of his parents.

2.       The Plaintiffs bring this action not only for money damages but also for the following express purposes: a) to obtain a temporary restraining order preventing Defendants from determining that T.L. is ineligible for varsity athletics and thereby allowing T.L. to participate in varsity athletics; b) to obtain additional injunctive relief permanently enjoining Defendants from barring T.L. from participating in varsity athletics and thereby allowing T.L. to participate in varsity athletics; c) to obtain a declaration that the vagueness of the Bylaws renders them unconstitutionally void; d) to obtain a declaration that the arbitrary application of the Bylaws by the Defendants was and is unconstitutional and violates T.L.'s and other students constitutionally protected rights; and e) to obtain a declaration that no deference be given to the Defendants' actions by this Court.

3.       T.L. is a very talented eleventh grade athlete who plans on attending college on a division one wrestling scholarship. In addition to wrestling, T.L. also plays varsity football. His parents are of modest means and are separated. T.L. is a decent young man

who has dealt with his share of challenges in his education including, the occasional use of alcohol and marijuana.

## II.    JURISDICTION

4.      Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the First, Fourth and Fourteenth Amendment to the United States Constitution, 28 U.S.C. §§ 1331 and 1343, and 28 U.S.C. § 1367.  This Court has original jurisdiction over Counts 1 through 4, and supplemental jurisdiction over Counts 5, 6, and 7.

5.      Venue in this District is authorized by 28 U.S.C. § 1391(b) because the Defendants conduct business or reside in this District, and because this District is where a substantial part of the events or omissions giving rise to the claim occurred.

## III.    PARTIES

6.      T.L. is a minor child who resides primarily with his mother, B.A.P., and shares a residence with his father, M.R.L., in Shakopee, Minnesota.  Specifically, T.L. and his family reside within the boundary of the Shakopee Public School District, Independent School District 720.  The Plaintiffs are citizens of the United States and residents of the State of Minnesota.

7.      Defendant the Minnesota State High School League ("League") is a domestic non-profit corporation formed under Minn. Stat. § 317A, File Number D-416 with a filing date of May 27, 1960 with the Minnesota Secretary of State, whose President is John Hamann, and whose registered Office Address is 2100 Freeway Boulevard, Brooklyn Center, Minnesota 55430.  It is responsible to ensure that it adopts procedures to ensure public notice of all eligibility rules and policies that will afford the opportunity for public hearings on proposed eligibility rules. Minn. Stat. § 128C.03.

8.        Defendant David Stead ("Stead") is a party in his individual and official capacity as the Executive Director of the Minnesota State High School League. Stead, on information and belief, acted as an agent of the League and Shakopee at all times relevant times and under the color of state law. On information and belief, Stead is a resident of the State of Minnesota. Stead was responsible, in part or in whole, for violating T.L.'s First, Fourth and Fourteenth Amendment rights resulting in barring T.L. from participation in varsity athletics. Defendants Stead and League (collectively "League Defendants") will, on information and belief, endorsed, adopted and enforced the arbitrary and capricious application of League Bylaws by school district administration that has led to the denial of T.L.'s right to his parents presence in any disciplinary interrogation, to be free from unlawful seizure, to have legal counsel present at a disciplinary proceeding, to free speech and to a hearing following a determination of ineligibility. Each of these denials of T.L.'s rights as in violation of state law, unconstitutionally deprived T.L. of a property right without due process, and negatively impacted T.L. and his family. Defendants Stead and League have, based on conversations with students and families in the community, endorsed, adopted and enforced the arbitrary and capricious application of League Bylaws by school district administration with other students within the Shakopee Public Schools since at least 2009. Finally, Defendants Stead and League endorsed, adopted and enforced a Fair Hearing Procedure that is neither fair nor does is constitute a hearing consistent with T.L. and other Shakopee student's right to due process.

9.        Defendant Shakopee Public Schools, Independent School District 720 ("Shakopee") is a governmental entity that contains and administers the public schools

within its boundaries under the management and control of the Shakopee Board of Education. The Defendant is an *independent school district* as that term is defined at Minn. Stat. § 120A.05, and is organized and operated under the laws of the State of Minnesota.

10.     Defendant John Bezak ("Bezak") is a party in his individual and official capacity as the Assistant Superintendent of Shakopee. Bezak acted as an agent or employee of Shakopee at all times relevant times and under the color of state law. On information and belief, Bezak is a resident of the State of Minnesota. Bezak was responsible, in part or in whole, for violating T.L.'s First, Fourth and Fourteenth Amendment rights resulting in barring T.L. from participation in varsity athletics. Bezak's arbitrary application of League Bylaws, and his denial of T.L.'s right to his parents presence, to be free from unlawful seizure, his right to counsel at a disciplinary proceeding, to free speech and to a hearing following a determination of ineligibility were in violation of state law, unconstitutionally deprived T.L. of a property right without due process, and negatively impacted T.L. and his family.

11.     Defendant John Janke ("Janke") is a party in his individual and official capacity as the Activities Director of Shakopee High School, a public school contained and administered by the District. Janke acted as an agent or employee of the District at all relevant times and under the color of state law. On information and belief Janke is a resident of the State of Minnesota. Janke was responsible, in part or in whole, for violating T.L.'s First, Fourth and Fourteenth Amendment rights resulting in barring T.L. from participation in varsity athletics. Janke's arbitrary application of League Bylaws, and his denial of T.L.'s right to his parents presence, to be free from unlawful seizure, to

counsel at a disciplinary proceeding, to free speech and to hearing a following a determination of ineligibility were in violation of state law, unconstitutionally deprived T.L. of a property right without due process, and negatively impacted T.L. and his family.

### IV.    FACTUAL ALLEGATIONS

12.    The Plaintiffs incorporate by reference as if fully set forth herein all preceding paragraphs.

13.    T.L. is a Native American student in the eleventh grade currently enrolled at Shakopee High School ("SHS").

14.    T.L. has been a member of the SHS football team since 2011, when he was a freshman.

15.    In December of 2011, as a freshman member of the SHS varsity wrestling team, T.L. was declared ineligible due to a violation of League Bylaw 206.00. This was a violation of the Student Code of Responsibilities ("Code"). The violation stemmed from a verbal altercation with a teacher, which resulted in a 5-day suspension from school. The penalty for a violation of the Code is left to the discretion of the school administration. Given that this was T.L.'s first violation, Janke, as an agent of SHS, declared T.L. ineligible from participating in interscholastic wrestling competitions for two (2) weeks. However, during this time of ineligibility, T.L. was permitted to participate in practice and team activities at the discretion of his coach.

16.    Upon the restoration of his eligibility on December 19, 2011, T.L. did not commit any further violations during the school year, nor was he subject to any discipline.

17.     In August of 2012, as a sophomore, T.L. was declared ineligible for two separate violations of League Bylaw 205.00 (Chemical Eligibility). Each of the violations stemmed from incidences that took place off school campus and during the summer of 2012, one in July and the other in early August. Defendant Jenke interrogated T.L. without the knowledge or consent of his parents and no provided no Tennesen warning. The door to Defendant Janke's office was closed and T.L. did not believe he was free to leave the office without Defendant Janke's permission. Though T.L. admitted to the July 2012 violation, he denied the August 2012 violation. Nevertheless, Janke, as an agent of SHS and the League concluded that based on evidence provided to SHS, there was reasonable cause to believe that the August 2012 violation had occurred.

18.     The July 2012 incident was deemed to be T.L.'s second violation. Under League Bylaw 205.2(B), the penalty for a second violation is ineligibility for three (3) weeks, or six (6) contests, whichever is greater. T.L. was subsequently declared ineligible for six contests of the fall football season, with his eligibility restored on October 8, 2012.

19.     Neither T.L. nor his parents have ever been provided with the factual basis for the alleged violations during the summer of 2012.

20.     The August 2012 incident was deemed to be T.L.'s third violation. Under League Bylaw 205.2(C), a third violation carries with it a penalty of four (4) weeks, or twelve (12) contests, whichever is greater. According to the League's Bylaws, the third penalty can only be served upon the completion of the second. T.L. was declared ineligible for twelve contests, beginning on October 8, 2012. The period of ineligibility ran through the end of the fall season and extended into the winter season.

21.     In a letter to the Plaintiffs, dated August 30, 2012, and regarding T.L.'s alleged violations of League Bylaw 205.00, Defendant Janke stated that in order for the penalty to be considered served, T.L. must finish the fall season in good standing, and furthermore, that if T.L. failed to do so, the period of ineligibility would start over. However, not only did Defendant Janke fail to provide any definition of good standing, he did not provide any League or District authority requiring such a condition, nor can any such condition be found within the League Bylaws.

22.     On February 4, 2013, Defendant Janke called T.L. to his office, closed the door and interrogated T.L. about his activities during the weekend of January 26-27, 2013. T.L. did not feel free to leave without Defendant Janke's permission and was told that he would be suspended from athletics if he did not answer Defendant Janke's questions.

23.     A report issued by the Shakopee Police Department to the SHS Chemical Abuse Pre-Assessment Team, stated that there was probable cause to believe that on January 26, 2013 T.L. attended a party where he consumed alcohol and subsequently got into a fight with another party attendee. According to Minn. Stat. § 121A.26, such information is intended for use only by the Chemical Abuse Pre-Assessment Team of SHS. Nevertheless, Defendants Janke, Shakopee and the League used the information intended under statute to be disclosed for the purpose of assessing chemical dependency solely for disciplinary purposes.

24.     T.L. was again declared ineligible not for a chemical violation under League Bylaw 205.00, but rather for a violation of the Code under League Bylaw 206.00, leaving the penalty entirely up to the discretion of SHS administration. Subsequently, Janke

deemed the violation to be T.L.'s third, and declared T.L. ineligible for twelve (12) contests. Defendant Janke did not provide a date upon which T.L.'s eligibility would be restored, nor have Defendants provided Plaintiffs with any such information as of this time.

25.     On or about February 11, 2013, while attending a meeting with Defendant Janke regarding the recent determination of T.L.'s ineligibility, T.L.'s mother, B.A.P., informed Janke that she was concerned that the Defendant was singling her son out because he was Native American and she explicitly stated that neither Janke nor anyone else from the SHS administration, was to meet with T.L. without her present.

26.     On Saturday August 24, 2013 while at football practice, Coach John McBroom ("McBroom") approached T.L., as he was preparing to board a bus with his teammates for a scrimmage, and told him in front of his teammates that Head Coach Jody Stone ("Stone") wanted to see him in the conference room.   T.L. complied, but upon entering the conference room, was met by Stone and Defendant Janke.

27.     Stone closed the door to the conference room and stated to T.L. that he and Defendant Janke have evidence from participants during the team retreat in Mora Minnesota on August 21-23, 2013, he and Defendant Janke received evidence from retreat participants that T.L. had used chemicals.  Neither Defendant Janke nor Stone informed T.L.'s parents of their intent to interrogate T.L., nor did they provide T.L. with a Tennesen warning.  T.L. did not feel free to leave because of Defendant Janke and Stone's position as school officials, the door was closed, he was not provided with a Tennesen warning.  Defendant Janke and Stone threatened T.L. that he would not be permitted to practice or participate with his team until he answered their questions.

28.     T.L. was upset, embarrassed and humiliated by the false allegations and denied any chemical usage. T.L. explained that despite his past struggles, he was turning things around. However, Stone stated that he didn't think it would be appropriate for T.L. to attend that day's scrimmage because T.L. was "mad and agitated."

29.     Upon being told that he would not be allowed to participate in the scrimmage, T.L. began crying and expressed that he was disappointed and hurt by the allegations. Distraught over what he perceived to be an injustice, T.L. used profanities in reference to the decision, and frustrated, opened the door forcefully and exited the room. T.L. was then escorted back to the team bus and made to retrieve his gear in front of the entire football team. Once back in the locker room, T.L. continued to cry and called his mother, informed her of the situation, and asked that she come down to the school.

30.     Following the meeting with T.L., Stone and Janke proceeded to meet with R.B. ("R.B.") a minor, a white student and teammate of T.L. regarding similar allegations. R.B. admitted that he had used chemicals.

31.     T.L. witnessed R.B. storming out of the conference room while screaming and using profanities. R.B. continued to scream as he went through the hallway knocking over trashcans. Shortly thereafter, McBroom called the Shakopee Police Department to report that R.B. was out of control. In the meantime, T.L. attempted to comfort R.B. and calm him down. The Police arrived at the school to find R.B. still visibly upset. R.B.'s parents were present the entire time the interrogation and incident took place. R.B. was cited for two disciplinary infractions actions. He was suspended from two games for the chemical violation and another game for using profanity, storming out of the office and losing his temper. The Shakopee Defendants ultimately dismissed the second

disciplinary penalty and restored R.B.'s eligibility to participate in team sports after the two game suspension.

32.         Defendant Janke contacted T.L.'s parents and stated that he wanted to interview T.L. again on the 26th of August 2013. When T.L.'s parents asked to have an attorney present at the meeting on T.L.'s behalf, Defendant Bezak refused and stated that T.L. would be suspended from all further athletics until he did attend a meeting without an attorney and answered all Stone and Janke's questions. Defendant Janke also told T.L.'s parents that they could not have an attorney present because private information regarding other students would be discussed during the meeting. However, no private information related to any other student was disclosed to the Plaintiffs during this or any other meeting.

33.         When the Plaintiffs arrived, four police officers were standing in the hallway across from the conference room and were clearly visible from where the Plaintiffs were to meet with Janke and Stone. The Plaintiffs were shocked, concerned and intimidated by the police presence.

34.         During the meeting on the 26th of August between Janke, Stone, T.L., B.A.P. and M.R.L., Janke produced printed copy of T.L.'s private Twitter account wherein T.L. had written to another student "Im boutta drill my 'teammates' on monday." Rather than address the initial and false allegations of chemical use, Stone and Janke produced the private Twitter account postings of T.L. and another student and insisted that T.L. was a danger to others. T.L. explained that he was talking about upcoming football practice. On information and belief, Defendants Janke and Bezak engaged in unduly harsh,

unequal and arbitrary punishment of T.L., motivated in part by his race and in retaliation for the Parents' efforts to provide T.L. will legal counsel.

35.     At no time did T.L. or his Parents consent to any of the Defendants accessing his private communications from his Twitter, email or Facebook account. The Plaintiffs have never been informed how the Defendants came into possession of the Twitter, email and/or Facebook account information. T.L.'s Twitter, email and Facebook accounts are all set on a "private" setting requiring that he confirm any individual who wants to view the private communications and his communications were made off of school grounds and during the summer when school was not yet in session.

36.     On the basis of conversations with other students and families in the community, many other children, from at least 2009 forward, have had their private communication accounts such as Twitter, email and/or Facebook examined by Defendants Shakopee, Janke and Bezak (collectively "Shakopee Defendants") without their consent and used for the purposes of disciplinary proceedings against the students. Other students and families have also been compelled by Shakopee Defendants, from at least 2009 forward, to disclose this private communications. In this case, another student or individual was compelled to disclose T.L.'s private Twitter communications for the sole purpose of disciplining T.L.

37.     Based on conversations with other families and individuals in the Shakopee community, some of whom moved school districts because of the Shakopee Defendants' actions, have had children, who are the siblings of student athletes, interrogated for hours, against the expressly stated demands of the parents, and to the point of tears by Defendant Janke without reasonable suspicion as Defendant Janke sought to extract

private and damaging information from those family members, have had their child's private communications via Twitter, email or Facebook accessed without consent for the purposes of disciplining their and other children, have been forced to produce the private communications of other children, and have been threatened and intimidated when any member of the family refuses to comply with Shakopee Defendants' demands for interrogations and private information. Families and individuals within the community have also stated that students are routinely interrogated, forced to produce private information and are then disciplined through suspension or ineligibility and that this practice has been going on for years, and at least as early as 2009. Families within the community have also stated unequivocally that there is a pervasive fear that if a person stands up to the Shakopee Defendants, their children will be targeted for discipline, suspension and ineligibility to play any sports.

38.     The Plaintiffs expressed their concern over Defendant Janke and Stone's interrogation of their son, the lack of information and evidence to support the initial interrogation, the access of T.L.'s private communications and their belief that Defendant Janke was targeting T.L. because he is Native American.

39.     After the meeting, Shakopee Defendants, sent the Plaintiffs correspondence dated the 29th of August 2013 setting forth the reasons for taking disciplinary action against T.L., without reference to the false allegation of chemical use. The correspondence noted that T.L.'s "behavior" violated both Shakopee and the League rules. Defendants asserted that T.L. was ineligible to participate in the football program for the entire school year. Referenced in the correspondence was the Fair Hearing Procedures, specifically noting that the decision by Shakopee Defendants, which would

be enforced by the League Defendants, could not be appealed at all nor could it be appealed through the Fair Hearing Procedure. In addition, Shakopee Defendants wrote the following:

> [A]ny opportunity that T.L. may have for future participation in Minnesota State High School League activities must be discussed with by the Activities Director and other appropriate School District staff, coaches and administrators as determined by the School District prior to T.L. being permitted to participate in activities in the future. If T.L. should be permitted to participate in activities in the future, the School District will require him to sign a "Participation Behavioral Agreement" in which T.L. would agree that any further behavioral violations, as determined by the Athletic Director and other appropriate School District staff, coaches and administrators, would result in automatic removal from future activities.

*Attachment A.*

40.     Minnesota State High School League Rule 206.3 provides the following language:

> A student who is dismissed from school or who violates the Student Code of Responsibilities is not in good standing and is ineligible for a period of time as determined by the school principal acting on the authority of the local board of education. The League specifically recognizes that certain conduct requires penalties that may exceed those penalties typically imposed for first violations. For example, when a student is suspended from school the student is not in good standing and cannot begin to serve the participation penalty until the student has completed the suspension from school and is returned to good standing.

41.     The only penalties for violations for the Student Code of Responsibilities are set forth as follows and appear related to "ejection from a contest":

> a) During the Regular Season: A student-athlete who is ejected from a game/meet, shall not participate in a game/meet for the remainder of that day. The student is also suspended from the next scheduled, rescheduled, or contracted game/meet at that level of competition and all games/meets in the interim at other levels of competition.
> b) The second and subsequent violations carry a four regularly scheduled game/meet ineligibility penalty.

206.4(b). There is nothing in the League rules that identify a suspension from athletics for an entire season, an indefinite suspension with additional conditions prior to resuming athletics, or the requirement of a Participation Behavioral Agreement prior to the resumption of participation in athletics. The League Defendants' Bylaws that lack specificity, have not been identified or subject to public input, and are subject to subjective interpretation and enforcement deny T.L. constitutionally protected property interest.

42.     T.L. has been denied access to any due process hearing to challenge the decision by the Shakopee Defendants. *Attachment B*. He has not been able to participate in football and, according to Shakopee Defendants notice, which is endorsed and enforced by Defendants Stead and MSHL, will not be able to participate in wrestling unless and until he complies with the extraordinary, as well as arbitrary and capricious, measures not set forth in any of the Shakopee or League rules for athletic participation.

43.     Shakopee Defendants violated T.L.'s Parents' liberty interests in the care, custody and management of their minor son when they seized and interrogated T.L. without the presence of a parent, contrary to their explicit instructions to the Defendant Janke.

44.     Shakopee and League Defendants denied the Plaintiffs access to due process by concluding the alleged conduct violations fell under the Student Code of Responsibility and are not the subject of a Fair Hearing Procedure.

45.     Shakopee and League Defendants have denied the Plaintiffs access to due process by characterizing the August 2013 incident as falling under the Student Code of

Responsibility while at the same time characterizing is as T.L.'s fourth violation under the League rules.

46.     Shakopee Defendants have violated T.L.'s privacy and First Amendment right to free speech when they unlawfully accessed his private Twitter, email and/or Facebook account and private juvenile records and used that information in a disciplinary proceeding.

47.     Shakopee Defendants violated T.L.'s Fourth Amendment rights when they unlawfully seized and interrogated him, as well as denied him access to legal counsel.

*Attachment C.*

48.     Shakopee Defendants routinely and persistently receive private and confidential information from the Shakopee Police Department regarding the arrest or charges made against any and all public school students attending Shakopee Public Schools.  This information is protected by state law with a few notable exceptions. However, Shakopee Defendants often are in possession of information that exceeds the statutory exceptions and well in advance of the information being provided to the parents of children within Shakopee Public Schools.  For example, an alleged egging incident involving four students took place on Halloween of 2012.  Though questioned by the police, no charges were ever filed against the children and the information remained confidential.  However, in February 2013, Defendant Janke interrogated each of the students individually about the alleged egging, without the knowledge or consent of their parents, and threatened the students with discipline if they did not admit their involvement, claiming that he had a copy of the police report detailing what they had done. The private and confidential information is then used to discipline students,

interrogate students and extract private and confidential communications regarding the student and other students in the Shakopee community.

49.    Shakopee and League Defendants have discriminated against T.L. as a Native American student by meting out discipline that is excessive, arbitrary and capricious in light of the discipline meted out to a similarly situated white student athlete alleged to have engaged in the same, if not greater, misconduct as T.L.

50.    Shakopee Defendants have denied the Plaintiffs any opportunity to challenge the basis for the decision and the decision itself by refusing to produce requested records under the Minnesota Government Data Practices request made by the Plaintiffs and by refusing to provide any hearing to challenge the decision.  *Attachment B.*

51.    The Shakopee Police Department has disclosed to Defendant Shakopee each time T.L. has had contact with law enforcement related to chemical use within the community.  Minnesota statutes authorize the disclosure of this information for the purpose of intervening on behalf of children with chemical dependency concerns.

52.    According to Minnesota Statute entitled Student Health and Safety,

> Every public school, and every nonpublic school that participates in a school district chemical abuse program shall establish a chemical abuse preassessment team. The preassessment team must be composed of classroom teachers, administrators, and to the extent they exist in each school, school nurse, school counselor or psychologist, social worker, chemical abuse specialist, and other appropriate professional staff. The superintendents or their designees shall designate the team members in the public schools. The preassessment team is responsible for addressing reports of chemical abuse problems and making recommendations for appropriate responses to the individual reported cases.

Minn. Stat. ¶ 121A.26.[1]

---

[1]  One of the disclosures for Chemical Abuse Pre-assessment Team sent by Shakopee Police Department to Shakopee Public Schools contained the highly inaccurate and inflammatory allegation that T.L. had heroin in his possession.  This information is unequivocally false.

53.     At no time have the Shakopee Defendants ever used the Chemical Abuse Pre-assessment Team disclosure for any other purpose than to discipline T.L.. Shakopee Defendants exploit this disclosure for the sole purpose of disciplining students and not for the intended purpose of intervening on behalf of students with chemical dependency needs.

54.     The Plaintiffs as well as other students and parents in the community, according to conversations with those individuals, have heard both the coaches and the athletic director and the athletic staff freely, persistently and, liberally use profanity directed at student athletes and non-athlete students during practice and off the field including the liberal use the "F" word. Students and families in the community have stated that cursing and swearing at student athletes by coaches and the athletic staff is the norm in Shakopee Public Schools.

55.     The actions taken and decision made by Shakopee and League Defendants were willful and unreasoned, without consideration to the facts and circumstances or the constitutional rights of the Plaintiffs. No evidence has been provided that shows or tends to show that Shakopee Defendants had a reasonable suspicion to seize and interrogate T.L. for chemical violations without the consent and presence of his parents.

56.     Shakopee Defendants engage in a widespread practice over a period of years with many students of 1) seizing and interrogating public school students and athletes without reasonable suspicion; 2) seizing and interrogating students without the knowledge and consent of their parents; 3) interrogating students without providing the statutorily identified Tennesen warning; 4) accessing students' private communications in

the form of Twitter, email and/or Facebook accounts for disciplinary purposes; and 5)

compelling other students to disclose private communications for disciplinary purposes.

57.        Defendants Janke and Bezak both have the authority and responsibility to

formulate school building rules and regulations necessary to enforce Shakopee Public

Schools student discipline.  Defendants Janke and Bezek have the authority to discipline

students under the League rules, specifically Rule 206.  As licensed educators,

Defendants Janke and Bezak knew or should have known of the constitutional rights of

public school students.

58.        Plaintiffs requested in writing through their counsel that Shakopee Defendants

provide all educational and disciplinary data from Shakopee Public Schools regarding

T.L..  The request included all documents, statement, witness information and any and all

other information that formed the factual basis for the interrogations that took place on

the 24th and 26th of August 2013.  Shakopee Defendants denied this request.

59.        Wrestling at Shakopee Public Schools begins on the 20th of November 2013.

## V.  CLAIMS

### COUNT ONE
### VIOLATIONS UNDER THE FOURTEENTH AMENDMENT
### & SECTION 1983
### (RIGHT TO DUE PROCESS - AGAINST ALL DEFENDANTS)

60.     The Plaintiffs incorporate paragraphs 1 through 59 as though fully set forth

herein.

61.     All Defendants acted with intent to violate T.L.'s constitutional rights, their

unlawful acts were outrageous, were engaged in willfully, recklessly, in bad faith, and

with reckless indifference to T.L.'s constitutional rights.

62.     All Defendants, while acting under the color of state law, intentionally and deliberately deprived T.L. of his civil rights guaranteed by the Fourteenth Amendment to the United States Constitution by depriving him of his property interest in his athletics without resort to any due process.  As a direct and proximate result thereof, Plaintiffs were injured and damaged.

63.     The direct and proximate result of the Defendants' wrongful and unlawful conduct was to subject the Plaintiff T.L. to extensive humiliation, loss of reputation, degradation, harassment and threats and, as a result, Plaintiff suffered severe emotional distress, mental anguish, physical discomfort and loss of their property interest in his education.

64.     Plaintiffs are entitled to recovery of their costs, including reasonable attorney's fees, under 42 U.S.C. § 1988.

65.     As a result of the deprivations of Plaintiffs' rights under the United States Constitution, they sue for damages.

### COUNT TWO
### VIOLATIONS UNDER THE FOURTH AMENDMENT
### & SECTION 1983
#### (UNREASONABLE SEIZURE - AGAINST SHAKOPEE DEFENDANTS)

66.     The Plaintiffs incorporate paragraphs 1 through 65 as though fully set forth herein.

67.     The Shakopee Defendants acted with intent to violate T.L.'s constitutional rights, their unlawful acts were outrageous, were engaged in willfully, recklessly, in bad faith, and with reckless indifference to T.L.'s constitutional rights.

68.     Shakopee Defendants seized and interrogated T.L., and denied him his right to counsel, thus violating his rights against unreasonable seizure and interrogation under the Fourth Amendment to the United States Constitution and his right to due process under

the Fourteenth Amendment to the United States Constitution.

69.     The acts and failure to act of the Shakopee Defendants, each of whom had actual knowledge of Defendants Janke and Bezak's propensity for such similar conduct and that Defendants Janke and Bezak were substantially certain to continue to seize and confine T.L. and other students of the Shakopee Public School, violated T.L.'s and other students' rights against unreasonable seizure under the Fourth Amendment to the United States Constitution, and their rights to due process under the Fourteenth Amendment to the United States Constitution.

70.     Shakopee Defendants engage in a widespread practice of seizing and interrogating public school students without either a reasonable suspicion or the knowledge and consent of the students' parents, and deny students and families the right to counsel all for disciplinary purposes

71.     The direct and proximate result of the Defendants' wrongful and unlawful conduct was to subject the Plaintiff T.L. to extensive humiliation, degradation, loss of reputation, harassment and threats and, as a further result, Plaintiff suffered severe emotional distress, mental anguish, physical discomfort and loss of his property interest in his education.

72.     Plaintiffs are entitled to recovery of their costs, including reasonable attorney's fees, under 42 U.S.C. § 1988.

73.     As a result of the deprivations of Plaintiffs' rights under the United States Constitution, they sue for damages.

**COUNT THREE**
**VIOLATIONS UNDER THE FIRST AMENDMENT**
**& SECTION 1983**
**(RIGHT TO FREE SPEECH/PRIVACY -**

74.     The Plaintiffs incorporate paragraphs 1 through 73 as though fully set forth herein.

75.     The Shakopee Defendants acted with intent to violate T.L.'s constitutional rights, their unlawful acts were outrageous, were engaged in willfully, recklessly, in bad faith, and with reckless indifference to T.L.'s constitutional rights.

76.     Shakopee Defendants, as state actors, engaged in and continue to engage in a widespread practice of accessing students' private communications in the form of Twitter, email and/or Facebook accounts or compelling other students to produce private communications for disciplinary purposes.  The confidential and private information is obtained from the Shakopee Police Department for the sole purpose of disciplining students.

77.     The acts and failure of act as the Shakopee Defendants, each of whom had actual knowledge of Defendant Janke and Bezak's propensity for such similar conduct, and that Defendant Janke and Bezak were substantially certain to continue to seize and confine T.L. and other students of the Shakopee Public School, violated T.L.'s rights against privacy and free speech under the First Amendment to the United States Constitution.

78.     The direct and proximate result of the Defendants' wrongful and unlawful conduct was to subject the Plaintiff T.L. to extensive humiliation, degradation, loss of reputation, harassment and threats and, as a further result, Plaintiff T.L. suffered severe emotional distress, mental anguish, physical discomfort and loss of his property interest in his education.

79.     Plaintiffs are entitled to recovery of their costs, including reasonable attorney's fees, under 42 U.S.C. § 1988.

80.     As a result of the deprivations of Plaintiffs' rights under the United States Constitution, they sue for damages.

## COUNT FOUR
### VIOLATIONS UNDER THE FOURTEENTH AMENDMENT & SECTION 1983
### (LIBERTY INTEREST - AGAINST SHAKOPEE DEFENDANTS)

81.     The Plaintiffs incorporate paragraphs 1 through 80 as though fully set forth herein.

82.     Shakopee Defendants, while acting under the color of state law, intentionally and deliberately deprived Plaintiffs of their civil rights guaranteed by the Fourteenth Amendment to the United States Constitution by depriving T.L.'s Parents of their liberty interest in control, care and custody of their minor son, T.L.  As a direct and proximate result thereof, Plaintiffs were injured and damaged.

83.     The direct and proximate result of the Shakopee Defendants wrongful and unlawful conduct in seizing and interrogating T.L. against the explicit instructions of B.A.P. and M.R.L. subjected all of the Plaintiffs to emotional distress, mental anguish, and physical discomfort, as well as causing discord within the family unit.

84.     The direct and proximate result of the Defendants' wrongful and unlawful conduct was to subject the Plaintiffs to extensive humiliation, loss of reputation, degradation, and familial discord and, as a further result, Plaintiffs suffered severe emotional distress, mental anguish, physical discomfort and loss of their liberty interest in their familial integrity.

85.     Plaintiffs are entitled to recovery of their costs, including reasonable attorney's fees, under 42 U.S.C. § 1988.

86.     As a result of the deprivations of Plaintiffs' rights under the United States Constitution, they sue for damages.

## COUNT FIVE
## VIOLATIONS UNDER THE MINNESOTA STATE CONSTITUTION
## (AGAINST ALL DEFENDANTS)

87.     The Plaintiffs incorporate paragraphs 1 through 86 as though fully set forth herein.

88.     All Defendants acted with intent to violate T.L.'s constitutional rights, their unlawful acts were outrageous, were engaged in willfully, recklessly, in bad faith, and with reckless indifference to T.L.'s constitutional rights.

89.     All Defendants, while acting under the color of state law, intentionally and deliberately deprived T.L. of his civil rights to due process.  The Shakopee Defendants deprived the T.L. of his right to free speech, privacy and to be free from unlawful seizures as set forth in the Minnesota State Constitution. As a direct and proximate result thereof, Plaintiffs were injured and damaged.

90.     Shakopee Defendants while acting under the color of state law, intentionally and deliberately deprived Plaintiffs' parents, B.A.P. and M.R.L., of their civil rights guaranteed by the Minnesota State Constitution, Minn. Const. art. I, § 7, by violating the Plaintiffs' liberty interest in their control, care and custody of their minor child, by unlawfully seizing and interrogating T.L., and by violating T.L.'s right to privacy in private communications by accessing private communications, without the knowledge or

consent of the Plaintiffs, and accessing private juvenile records for the purposes of discipline. As a direct and proximate result thereof, Plaintiffs were injured and damaged.

91.    The direct and proximate result of the Defendants' wrongful and unlawful conduct was to subject the Plaintiffs to extensive humiliation, degradation, loss of reputation, and, familial discord and, as a result, Plaintiffs suffered severe emotional distress, mental anguish, physical discomfort and loss of their property interest in T.L.'s education.

92.    As a result of the deprivations of Plaintiffs' rights under the Minnesota State Constitution, they sue for damages.

## COUNT SIX
## VIOLATIONS UNDER MINN. STAT. § 128C.03
### (AGAINST LEAGUE DEFENDANTS)

93.    The Plaintiffs incorporate paragraphs 1 through 92 as though fully set forth herein.

94.    Minnesota Statute §128C.03 provides that the League "adopt procedures to ensure public notice of all eligibility rules and policies that will afford the opportunity for public hearings on proposed eligibility rules."

95.    In the present case, the language of the statute that permits administrative override for eligibility and good standing requirements do not provide public notice of the procedures and policies, as the Plaintiffs have no notice of the unwritten disciplinary authority of school administrators and no way of accessing due process to challenge such decisions.

96.    League Defendants have a duty to abide by the statute and to provide notice and due process for students who are the subject of ineligibility or good standing

requirements, and the Plaintiffs had a reasonable expectation that League Defendants would abide by the statute.

97.     As a direct and proximate result of violation this statute, Plaintiffs have been injured.

98.     The Plaintiffs request and demand that an order issue compelling the League to allow T.L. to participate in interscholastic and varsity athletics and concluding that Plaintiffs' are entitled to monetary damages in an amount to be determined at trial.

## COUNT SEVEN
### VIOLATIONS UNDER THE MINNESOTA GOVERNMENT DATA PRACTICES ACT - MINN. STAT. CH. 13
### (AGAINST SHAKOPEE DEFENDANTS)

99.     The Plaintiffs incorporate paragraphs 1 through 98 as though fully set forth herein.

100.    Shakopee Defendants were, at all times relevant herein, a public school subject to the data privacy and disclosure requirements for educational and private data.  Minn. Stat. § 13.

101.    At all times relevant herein, Shakopee Defendants were acting in their official and professional capacities.

102.    Shakopee Defendants have a statutory obligation to respond "immediately" or "within 10 days" excluding "Saturdays, Sundays and legal holidays" from the date a data request is made by an individual.  Minn. Stat. § 13.04.

103.    Shakopee Defendants did not comply with their statutory obligation and instead ignored the request for records, specifically, those records that formed the basis of the seizure and interrogation of T.L., any student witnesses or statements that supported a

reasonable suspicion for the seizure and interrogation, and the origin(s) of the private communications upon which disciplinary actions were taken.

104.    Shakopee Defendants deliberately and knowingly delayed responding to the data request to thwart the Plaintiffs' efforts to challenge the arbitrary, capricious, discriminatory and unduly harsh discipline against T.L..

105.    As a direct and proximate cause of the District's agents and representatives' deliberate and knowing inaction pursuant to the request, Plaintiffs have incurred attorney's fees and costs to prosecute this claim.

## VI.  RELIEF

**THEREFORE,** Plaintiffs respectfully request that this court:

1.    Exercise jurisdiction over this cause of action;

2.    Declare that students in Minnesota have a constitutionally protected right to be eligible and participate in varsity athletics and that if that protected right is taken from them, they are entitled to due process prior to the deprivation;

3.    Declare T.L.'s right to be eligible and participate in athletics was taken from him by Shakopee and League Defendants without due process of law;

4.    Declare the right of T.L. and other students to be free from unlawful seizure and interrogation was violated by Shakopee Defendants;

5.    Declare the right of T.L., and other students, to due process in disciplinary proceedings, including the right to counsel, was taken from him by Shakopee and League Defendants;

6.    Declare that students and T.L.'s right to privacy and First Amendment rights in private communications including communications on Twitter, email and Facebook was violated by Shakopee Defendants;

7.    Declare that B.A.P and M.R.L.'s liberty interest in the care, control and custody of their minor child was violated by Shakopee Defendants;

8.    Declare students and Plaintiffs' right to all data related to disciplinary actions, including the names of any student witnesses or statements and the origins of information used by the public school that deprive students of participation in public school athletics;

9.      Declare that league Bylaw 206.00 is vague and does not give adequate public notice or due process as to the deprivation of a constitutional protected right;

10.     Grant Plaintiffs' request for a Temporary Restraining Order preventing all Defendants from barring or otherwise preventing T.L. from participating in interscholastic and varsity athletics;

11.     Issue a Preliminary Injunction preventing all Defendants from barring or preventing T.L. from participation in interscholastic and varsity athletics at Shakopee High School;

12.     Award compensatory damages against all Defendants, including costs and attorney's fees as appropriate, for all counts alleged above; and

13.     Provide such other and further relief as the Court deems just and equitable.


Respectfully submitted,

**KANE EDUCATION LAW, LLC.**

Dated: 24 September 2013          /s/ Margaret O'Sullivan Kane
                                 Margaret O'Sullivan Kane /ID # 220243
                                 Attorney for Plaintiffs
                                 1032 Grand Avenue
                                 Suite 202
                                 Saint Paul, Minnesota 55105
                                 651/222-8611

**VERIFICATION**

      I verify that I have read the foregoing Complaint, and that all of the facts and

statements made therein are true and correct to the best of my knowledge, and as to those

facts stated on information and belief, I also believe them to be true and correct.

Dated:_____        _____
                                            B.A.P.

Subscribed and sworn to before me
this _____ day of September, 2013.


_____
Notary Public