UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

T.L., a minor child, by and through
his Parents and Natural Guardians,
B.A.P. and M.R.L.,

               Plaintiffs,

v.

Minnesota State High School League David
Stead, individually and in his official capacity,
Shakopee Public Schools, John Bezak individually
and in his official capacity, and John Janke,
individually and in his official capacity,

               Defendants.

Case No:      13-CV-2739 (SRN/JJG)

**DEFENDANTS'
MEMORANDUM OF LAW IN
SUPPORT OF RULE 12 MOTION
TO DISMISS**

## INTRODUCTION

The instant case is a student discipline dispute between Defendant Shakopee Public Schools ("Shakopee" or "SHS") and a student of the same. The Complaint fails to allege that the Minnesota State High School League (the "League" or "MSHSL") did do, is doing, or will do anything relevant to Plaintiff's claims. Plaintiff has failed to allege a plausible claim against the MSHSL in general, and has failed to allege facts showing that the MSHSL is threatening a future injury in fact sufficient to justify prospective relief in equity. As such, Plaintiff's claims against the MSHSL and David Stead must be dismissed.

## FACTS

The Complaint describes a disciplinary matter between Shakopee and one of its students. T.L. was suspended from participating in the SHS football program for the 2013 season for behavior including, but not limited to:

1. Swearing at the football coach and the Activities Director;
2. Slamming and breaking the door to the Athletic Conference Room;
3. Not being cooperative during meetings on August 24 and August 26, 2013; and
4. Threatening to harm members of the football team.

Compl. Ex. A. Shakopee notified Plaintiffs via correspondence dated August 29, 2013, that T.L. "is not eligible to participate in the School District's football program this school year" because his behavior "violate[d] School District rules, specifically the prohibitions against verbal abuse involving staff, damage to school property and disruptive behavior." Compl. Attachment A. The above-described behavior coupled with three prior athletic suspensions led to Shakopee's determination that T.L. was "not in good standing" and therefore not eligible to participate in the school's football program for the 2013-2014 school year. *Id.*

MSHSL Bylaw 206.1 defines good standing to "mean that the student is eligible under of all [sic] the conditions and eligibility requirements *of that school* as well as the eligibility requirements of the Minnesota State High School League." Affidavit of David Stead, Ex. A, p. 35 (emphasis added). Bylaw 206.2 sets forth the League's Student Code of Responsibilities, which provides that students "will respect the rights and beliefs of others and will treat others with courtesy and consideration"; "will be fully responsible

for [their] own actions and the consequences of [those] actions"; "will respect the property of others'; "will respect and obey the rules of my school and the laws of my community, state, and country"; and "will show respect to those who are responsible for enforcing the rules of my school and the laws of my community, state and country." *Id.* The "Penalty" provision of Bylaw 206 provides that a student who violates the Code of Responsibilities is not in good standing is "ineligible for a period of time *as determined by the school principal*." *Id.* (emphasis added). John Bezak, "as Assistant Superintendent, and in consultation and agreement with the High School Principal and Activities Director," determined that T.L. violated "School District rules," was not in good standing, and was therefore "not eligible to participate in the School District's football program this school year." Compl. Ex. A.

Because the school district determines its "school's eligibility requirements for the student," Shakopee's decision was not subject to the League's Fair Hearing Procedures. *See* Stead Aff. Ex. B, p. 47. Neither the Minnesota State High School League nor David Stead has taken any action in this matter.

### ISSUES

1. Whether the Complaint should be dismissed for failure to state a claim upon which relief can be granted?

2. Whether Plaintiff has alleged an imminent injury in fact that may be redressed by prospective relief in equity?

**ARGUMENT**

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court generally must ignore materials outside the pleadings, but it may consider materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011). Accordingly, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment under Rule 12(d). *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

The Court must grant a Rule 12(b)(6) motion to dismiss for failure to state a claim if the plaintiff "cannot prove any set of facts in support of the claim which would entitle him to relief." *Stone Motor Co. v. General Motors Corp.*, 293 F.3d 456, 464 (8th Cir. 2002). The Supreme Court has emphasized that even under the liberal pleading standard of Rule 8, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain

"detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Iqbal*, 129 S. Ct. at 1964-65. "The threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). Accordingly, a plaintiff must provide more than labels and conclusions.

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

## I.  PLAINTIFF HAS FAILED TO ALLEGE A PLAUSIBLE CLAIM FOR RELIEF AGAINST THE MSHSL OR DAVID STEAD.

Defendants MSHSL and David Stead are named parties in Counts One, Five, and Six. *See* Compl., pp. 25-27. The remaining Counts Two, Three, Four, and Seven are exclusively against Defendant Shakopee Schools and are therefore not included in this motion. *Id.* With regard to the MSHSL and Mr. Stead, Plaintiffs ask this Court for a declaratory judgment "that students in Minnesota have a constitutionally protected right to be eligible and participate in varsity athletics"; that the League deprived T.L. of due

process; that students have a right to legal counsel in school-related disciplinary proceedings and that the League somehow denied that right; and that "league Bylaw 206.00 is vague and does not give adequate public notice or due process." Compl., pp. 27-28.

Plaintiffs have not alleged, and cannot prove, any set of facts to state a plausible claim of relief against the MSHSL and Mr. Stead because students do not have a constitutionally-protected property or liberty interest in participating in varsity athletics; the League took no action against T.L. and could not have denied any due process; and Bylaw 206, approved by the League's Representative Assembly in 1991 with adequate public notice, is not vague or overbroad. Accordingly, Counts One, Five, and Six against the MSHSL and Mr. Stead should be dismissed.

A.    **Plaintiff does not have a constitutionally protected right to participate in varsity athletics and therefore Counts One and Five have not raised a right to relief.**

In order to raise a due process claim, a plaintiff must show a protected property or liberty interest has been implicated by the defendants. *Bishop v. Tice*, 622 F.2d 349, 353 (8th Cir. 1980). Plaintiff cannot show that T.L. has a constitutionally protected property or liberty interest in eligibility for interscholastic athletics, let alone *varsity* athletics. Accordingly, Counts One and Five should be dismissed.

When determining whether students have a protected property or liberty interest in interscholastic athletics, the overwhelming majority of the Federal Circuits,[1] Federal

---

[1] *See Cornerstone Christian Schs v. Univ. Interscholastic League*, 563 F.3d 127, 136-37 (5th Cir. 2009) (citing *Walsh v. La. High Sch. Athletic Ass'n*, 616 F.2d 152, 159 (5th Cir.

District Courts,[2] and state courts[3] have rejected arguments that interscholastic athletics

are protected under either the U.S. Constitution or the respective state constitution. This

---

1980); *Angstadt v. Midd-West Sch. Dist.,* 377 F.3d 338, 344 (3d Cir. 2004); *Seamons v. Snow*, 84 F.3d 1226, 1235 (10th Cir. 1996); *Davenport ex rel. Davenport v. Randolph Cnty. Bd. of Educ.*, 730 F.2d 1395, 1397 (11th Cir. 1984); *Hamilton v. Tenn. Secondary Sch. Athletic Ass'n*, 552 F.2d 681, 682 (6th Cir. 1976); *see also Hebert v. Ventetuolo*, 638 F.2d 5 (1st Cir. 1981).

[2] *See Dominic J. v. Wyo. Valley W. High Sch.*, 362 F.Supp.2d 560, 572 (M.D. Penn. 2005); *Jeffrey v. Bd. of Trs. of the Bells ISD,* 261 F. Supp. 2d 719, 726 (E.D. Tex. 2003); *Smith v. Chippewa Falls Area Unified Sch. Dist.,* 302 F. Supp. 2d 953, 957 (W.D. Wis. 2002); *Wooten v. Pleasant Hope R-VI Sch. Dist.*, 139 F. Supp. 2d 835, 842 (W.D. Mo. 2000); *Farver v. Bd. of Educ. of Carroll County*, 40 F.Supp.2d 323, 334 (D. Md. 1999); *Mazevski v. Horseheads Cent. Sch. Dist.,* 950 F. Supp. 69, 72-3 (W.D.N.Y. 1997); *McFarlin*, 784 F. Supp. at 592; *Giannattasio v. Stamford Youth Hockey Ass'n, Inc.*, 621 F. Supp. 825, 829 (D. Conn. 1985); *Justice v. NCAA*, 577 F. Supp. 356, 366 (D. Ariz. 1983); *Brands v. Sheldon Community Sch.*, 671 F. Supp. 627, 630 (N.D. Iowa 1987); *Park Hills Music Club, Inc. v. Board of Education*, 512 F. Supp. 1040, 1043 (S.D. Ohio 1981); *Williams v. Hamilton*, 497 F. Supp. 641, 645 (D.N.H. 1980); *Pegram v. Nelson*, 469 F. Supp. 1134, 1140 (M.D.N.C. 1979); *Ward v. Robinson*, 496 F. Supp. 1, 1-2 (E.D. Tenn. 1978); *Fluitt v. University of Nebraska*, 489 F. Supp. 1194, 1202-03 (D. Neb. 1980); *Kulovitz v. Illinois High School Association*, 462 F. Supp. 875, 877-78 (N.D. Ill. 1978); *Taylor v. Alabama High School Athletic Association*, 336 F. Supp. 54, 57 (M.D. Ala. 1972); *Paschal v. Perdue*, 320 F. Supp. 1274, 1276 (S.D. Fla. 1970).

[3] *See Ventetuolo*, 638 F.2d at 6 ("under Rhode Island law, there is no property right to play interscholastic sports"); *Scott v. Kilpatrick*, 237 So. 2d 652, 656 (Ala. 1970); *Ryan v. Cal. Interscholastic Fed'n — San Diego Section*, 114 Cal. Rptr. 2d 798, 808 (Cal. Ct. App. 2001) ("Neither the California Constitution nor California statutory law contains any provision that entitles students to an absolute right to participate in extracurricular activities and, precisely, in interscholastic athletics."); *L.P.M. and J.D.T. v. Sch. Bd of Seminole County*, 753 So.2d 130 (Fla. Dist. Ct. App. 2000); *Smith v. Crim*, 240 S.E.2d 884, 886 (Ga. 1977); *Jordan*, 706 N.E.2d 137; *Ind. High School Ath. Ass'n v. Carlberg*, 694 N.E.2d 222, 241-42 (Ind. 1997); *Chabert v. Louisiana High School Athletic Association*, 312 So.2d 343, 345 (La. App. 1975); *Mancuso v. Mass. Interscholastic Athletic Ass'n, Inc.*, 900 N.E.2d 518 (Mass. 2009) (no property or liberty interest under Massachusetts Constitution in participating in extracurricular activities); *Berschback v. Grosse Pointe Pub. Sch. Dist.*, 397 N.W.2d 234, 243 (Mich. Ct. App. 1986); *Mississippi H.S. Activities v. Coleman*, 631 So.2d 768, 774 (Miss. 1994); *State ex rel. Missouri State High School Activities Association v. Schoenlaub*, 507 S.W.2d 354, 359 (Mo. 1974); *Caso v. New York State Public High School Athletic Association*, 78 A.D.2d 41, 46 (1980); *Menke v. Ohio High School Athletic Association*, 441 N.E.2d 620, 624

list includes the 8th Circuit, which has determined that "a student's interest in participating in . . . interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement, . . . falls outside the protection of due process." *In Re U.S. ex rel. Missouri State High Sch., et al.*, 682 F.2d 147, 153 fn.8 (8th Cir. 1982) (internal citation omitted).

Plaintiff, however, seeks relief one step further than the cases cited above by arguing not only that T.L. has a protected interest in interscholastic athletics but that he has a constitutionally-protected interest in *varsity* athletics. *See* Compl. , p. 27 (asking this court to "[d]eclare that students in Minnesota have a constitutionally protected right to be eligible and participate in *varsity* athletics." (emphasis added).

Plaintiff's reliance on this Court's decision in *J.K. v. Minneapolis Pub. Sch.*, 849 F.Supp.2d 865, 877 (D. Minn. 2011), is misplaced. *J.K. speculated* in non-precedential *dicta* that, if presented with the issue, the Minnesota Supreme Court *may* find a property right in extracurricular activities. *See* 849 F.Supp.2d at 877. Although there may not be a Minnesota Supreme Court case on point, the Minnesota Court of Appeals has indicated

---

(1981); *Morrison v. Roberts*, 82 P.2d 1023, 1024-25 (Okla. 1938); *Whipple v. Oregon School Activities Association*, 629 P.2d 384, 386 (Or. 1981); *Pennsylvania Interscholastic Athletic Association, v. Greater Johnstown School District*, 463 A.2d 1198, 1201 (1983); *Bruce v. South Carolina High School League*, 189 S.E.2d 817, 819 (1972); *Tennessee Secondary School Athletic Association v. Cox*, 425 S.W.2d 597, 602 (1968); *Spring Branch I.S.D. v. Stamos*, 695 S.W.2d 556, 561 (Tex. 1985); *Starkey v. Board of Education*, 381 P.2d 718, 721 (Utah 1963); *Bailey v. Truby*, 321 S.E.2d 302, 315-16 (W. Va. 1984) ("Participation in extracurricular activities, including interscholastic athletics, does not rise to the level of a fundamental or constitutional right under . . . the West Virginia Constitution."); *see also Nieshe v. Concrete Sch. Dist.*, 127 P.3d 713 (Wash. Ct. App. 2005) (no property interest under the Washington Constitution in attending graduation ceremony).

that, under the Minnesota Constitution, that there is no property or liberty interest in extracurricular activities. *See Eason v. Indep. Sch. Dist. No. 11*, 598 N.W.2d 414, 419 (Minn. App. 1999). It is particularly noteworthy that *Eason* cited this Court's decision in *Peterson v. Independent School Dist. No. 811*, 999 F.Supp. 665, 674 (D. Minn. 1998), for the determination that there is "no property or liberty interest in a student's participation in extracurricular activities." *J.K.* did not discuss or even cite to either *Eason* or *Peterson* when undergoing its analysis of whether there exists a property right in extracurricular athletics under the Minnesota Constitution.

Instead, *J.K.* cited favorably a footnote in *Thompson v. Barnes*, a Minnesota Supreme Court case which did not hold or suggest a constitutionally-protected property right to participation in extracurricular activities (and certainly not a protected interest in varsity athletics). *J.K.*, 849 F.Supp.2d at 876. To the contrary, the *Thompson* footnote merely stated that that particular issue had been rendered moot. *See* 200 N.W.2d 921, 926 n.11 (Minn. 1972). Any suggestion by *Thompson* that there exists a property right in extracurricular activities was quashed by *Eason*.

*J.K.* further emphasized the fact that the *Thompson* footnote cited to *Kelley v. Metro. Cnty. Bd. of Educ. Of Nashville*, 293 F.Supp. 485 (M.D. Tennessee 1968), to suggest a property right in extracurricular activities. *See J.K.*, F.Supp.2d at 876-77. *J.K.'s* citation to *Kelley* to suggest a property right in extracurricular activities is curious given that directly prior to favorably citing *Kelley*—a federal case from a different circuit which found a constitutionally protected property right under Tennessee law—*J.K.*

acknowledged and then quickly disregarded the overwhelming majority of State and Federal courts that have found no constitutionally protected property interest in participating in extracurricular activities on the basis that: "they rel[ied] on other states' law" or were determined "only under federal constitutional law." *See J.K.*, 849 F.Supp.2d at 875. *J.K.* then favorably cited four cases which found a property right in extracurricular activities based upon *other states' laws. Id.* at fn.8. This inconsistent reasoning underscores *J.K.'s* lack of persuasive authority.

It is also worth noting that the property right in extracurricular activities issue was not raised by either party in *J.K.* In fact, the Court noted that "[t]he parties seem to agree that under the relevant rules of the Minnesota State High School League ("the League"), if J.K. transfers to a school other than Southwest, he will not be able to participate in varsity interscholastic sports during the upcoming year." *J.K.*, F.Supp.2d at 874. Moreover, the Minnesota State High School League could not address the *sua sponte* issue because the MSHSL was not a party to the *J.K.* case.

If this Court does find *Kelley* persuasive, the facts of the case provide an important context to distinguish it from the case at bar. The original action in *Kelley* was filed against the Nashville City Board of Education in 1955 in an effort to desegregate its schools. 293 F.Supp. at 487. At issue was the "suspension of Cameron High School, an all Negro school, from interscholastic athletic competition for one year from April 4, 1968" following allegations of misconduct at a basketball game. *Id.* at 488. Although not couched in explicit terms of "total exclusion," *Kelley* effectively held that due process

was violated because the school was totally excluded from interscholastic activities for one year. *See id.* at 492 (holding the school's "right to engage in secondary school athletics" triggered minimal procedural due process protections). *Kelley* further emphasized the fact that the suspension applied not only to basketball players but to "participants in other sports, such as football, who had no connection with the events at the tournament in question." *Id.* at 495. *Kelley* is therefore factually and legally distinguishable because, unlike the Cameron High School students in 1968, T.L. has not been totally excluded from engaging in secondary school athletics. Moreover, his football suspension was a result of *his* actions and not those of someone else.

In this matter, despite repeated conduct violations, T.L. remains eligible under MSHSL Bylaws to participate even during the pendency of his disciplinary suspension, but not in competitions. *see also* Stead Aff., Ex. A, p. 33 – Bylaw 205.2(D) (student eligible to participate in "[p]ractices, jamborees, inter-school scrimmages and previews" while serving a penalty). Shakopee determined, however, that T.L. could not participate at all on the football team. Moreover, Shakopee notified Plaintiff's that T.L.'s suspension was only for football, which is explicitly acknowledged in the August 29, 2013, correspondence from Defendant Bezak to Plaintiffs: "this is not a complete loss of eligibility for [T.L.] at this time." Verified Compl. Attachment A.

Because there is not a constitutionally protected property or liberty interest in extracurricular varsity athletics, the facts submitted to this Court do not create a plausible

claim for relief. Accordingly, Counts One and Five should be dismissed for failure to state a claim.

**B.     The Complaint fails to allege facts showing that the bylaws are unconstitutionally vague.**

The Bylaws at issue provide the MSHSL, and member-schools, with discretion to address "unique eligibility situations and such discretion does not create a constitutional violation." *H.R. v. Minn. State High Sch. League*, 2013 U.S. Dist. LEXIS 5215, *10 (D. Minn. Jan. 14, 2013 (citing *Bethel Sch. District No. 403 v. Fraser*, 478 U.S. 675, 686 (1986) ("Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions") (internal citation omitted); *Burrows v. Ohio High Sch. Athletic Ass'n*, 712 F.Supp. 620, 628 (S.D. Ohio 1988) ("The same degree of precision is not required of an athletic bylaw that would be required of a criminal statute.").

The League's Bylaws, including its eligibility requirements and penalties for violations were readily available to T.L. prior to August 29, 2013. The League's Handbook, including the eligibility requirements is published online and available at the MSHSL office during business hours. Stead Aff., ¶ 5. Moreover, pursuant to MSHSL Bylaw 303.1, schools provide a copy of the Eligibility Information Brochure to students "interested in participating in League-sponsored programs", and Bylaw 303.3 requires that member schools "read, discuss and explain the bylaws" to their student body. Stead Aff., Ex. B, p. 50. In addition, Plaintiffs received and signed the "Eligibility Statement"

each of the five years that T.L. has participated in interscholastic activities. Affidavit of John Janke, ¶ 7; *see also* Janke Aff., Ex. A. Consequently, Plaintiffs not only had notice of the eligibility and penalty bylaws, but they affirmed, in writing, that they understood and agreed to abide by those Bylaws. Janke Aff., Ex. A.

By signing the Eligibility Statement, Plaintiffs further acknowledged that they understood that "local rules may be more stringent, and penalties more severe, than MSHSL rules." Janke Aff., Ex. A. The Eligibility Statement specifically emphasizes the Student Code of Responsibilities in the middle of the page:

### STUDENT CODE OF RESPONSIBILITIES
- As a student participating in my school's interscholastic activities, I understand and accept the following responsibilities:
  - I will respect the rights and beliefs of others and will treat others with courtesy and consideration.
  - I will be fully responsible for my own actions and the consequences of my actions.
  - I will respect the property of others.
  - I will respect and obey the rules of my school and the laws of my community, state, and country.
  - I will show respect to those who are responsible for enforcing the rules of my school and the laws of my community, state and country.

*Id.* (emphasis in original). Immediately after this, the Eligibility Statement provides the following:

> **A student whose character or conduct violates the Student Code of Responsibilities or is suspended or expelled is not in good standing and is ineligible for a period of time as determined by the principal. . . .**

*Id.* (emphasis in original).

T.L. and at least one parent or guardian signed the Eligibility Statement on November 10, 2009; on November 17, 2009; on July 7, 2011; on August 10, 2012; and

most recently on July 18, 2013. Janke Aff., Ex. A. The facts show that Plaintiff and his parents not only had clear notice, but explicitly acknowledged an understanding and acceptance of the expectations T.L. was required to abide by in order to retain eligibility as well as the possible penalties. The Eligibility Statement signed by Plaintiffs specifically recited Bylaw 206.3's provision that the determination is up to the school: "ineligible for a period of time *as determined by the principal*." *Id.* (emphasis added). Moreover, the Eligibility Statement unambiguously states that "local rules may be more stringent, and penalties more severe, than MSHSL rules." *Id.*

Plaintiff has failed to allege facts sufficient to prove that Bylaw 206 is unconstitutionally vague. Accordingly, Plaintiffs could not have a reasonable expectation of eligibility. *See H.R. v. Minn. State High Sch. League*, 2013 U.S. Dist. LEXIS 5215 at *10-12 (holding that student could not have reasonable expectation of eligibility based on discretionary provisions of the MSHSL's Bylaws).

The Complaint contains nothing more than the "threadbare recitals of the elements of a cause of action supported by mere conclusory statements" rejected by the Supreme Court in *Iqbal*. 129 S. Ct. at 1964-65. The Student Code of Responsibilities unambiguously requires that a student must be courteous and respectful to others, particularly "those who are responsible for enforcing the rules of my school and the laws of my community, state and country." The Bylaws state, and the Eligibility Statement reinforces, the League's policy that the ineligibility determination is "determined by the principal" and can be "more severe than MSHSL rules." *See* Stead Aff., Ex. A, p. 35

14

(Bylaw 206.3 – "certain conduct requires penalties that may exceed those penalties typically imposed"; *see also* Janke Aff., Ex. A (Eligibility Statement – "local rules may be more stringent, and penalties more severe, than MSHSL rules"). T.L. is an 11th grade student at SHS who said "fuck you" to both the football coach and the Activities Director, left the room, slammed and broke a SHS door, and then kicked over garbage cans as he left. Such conduct is not "treat[ing] others with courtesy and consideration"; not "respect[ing] the property of others"; and is certainly not "show[ing] respect to those who are responsible for enforcing the rules of my school." Janke, Ex. A. This is precisely the type of behavior that is best addressed by the school at the local level and is why the MSHSL has made a deliberate decision not to get involved with school-level disciplinary decisions.

Bylaw 206.3 gives sole authority for determining student eligibility to the school principal who is in the best position to act. Stead Aff. Ex. A, p. 35. The principal's authority extends to the determination of the length of ineligibility. Accordingly, Plaintiff's allegation that "[t]here is nothing in the League rules that identify a suspension from athletics for an entire season, an indefinite suspension with additional conditions prior to resuming athletics, or the requirement of a Participation Behavioral Agreement prior to the resumption of participation in athletics" is without merit. The local school has the exclusive discretion to determine appropriate penalties for the students that represent its school in interscholastic activities. The MSHSL reinforces the school's ability to

determine the eligibility of its students for behavioral issues by removing such decisions from the League's Fair Hearing Process.

The facts alleged in the Complaint demonstrate that Plaintiffs had notice of the League's Bylaws on or before August 2013 and acknowledged in writing that they expressly understood and agreed to abide by Shakopee's local rules and the League's Bylaws. Several meetings were held between Shakopee administrators and the Plaintiffs where Plaintiffs were given a chance to explain their side of the story—specifically, an August 26 meeting where the parents were present. In short, Plaintiffs had explicit notice of the expectations for participation, the penalties for violations, and the inability of the MSHSL to intervene. Because there is no recognized protected property or liberty interest in extracurricular *varsity* athletics and because the facts show that T.L. was given ample notice and opportunity to respond, Plaintiff has failed to state a claim for due process violations against the MSHSL and David Stead and Counts One and Five should be dismissed.

### C.     Plaintiff has No Cause of Action Under Minn. Stat. § 128C.03.

Minn. Stat. § 128C.03 does not create a civil cause of action. *See Flour Exch. Bldg. Corp. v. State*, 524 N.W.2d 496, 498 (Minn. App. 1994) ("A statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication."). There is no explicit language in Minn. Stat. § 128C.03 creating a civil cause of action. Furthermore, there is no clear implication

creating a civil cause of action. To the contrary, rather than imply a civil cause of action, the Legislature created an express administrative remedy.

Plaintiff cannot plead facts sufficient to meet the test for an implied cause of action. To have an implied cause of action, a plaintiff must prove: (i) that plaintiff belongs to a class the statute intended to benefit; (ii) that the Legislature intended to create or deny a remedy; and (iii) whether implying a remedy is consistent with Legislative enactment. *Flour Exch. Bldg.*, 524 N.W.2d at 499.

Even if Plaintiff belongs to a class the statute intended to benefit, he has not alleged facts showing that he has met the statute's express standing requirement that "100 or more parents or guardians of students" request a public hearing. *See* Minn. Stat. § 128C.03. Moreover, the Legislature's express intent was not to create a judicial remedy but an administrative remedy. As a result, Plaintiffs have failed to exhaust their administrative remedies in this matter and implying a civil cause of action under § 128C.03 is inconsistent with its Legislative enactment. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 570-71 (1979) ("Implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best."). Count Six must be dismissed.

Assuming *arguendo* that Minn. Stat. § 128C.03 creates a civil cause of action, Plaintiff has not alleged facts to support his claim. Plaintiff misunderstands the plain language of Minn. Stat. § 128C.03, which requires that the League "adopt procedures to ensure public notice of all eligibility rules and policies that will afford the opportunity for

public hearings on *proposed* eligibility rules." (emphasis added). The League has adopted procedures to ensure public notice of proposed eligibility rules. The function of the League's Representative Assembly "is to consider all bylaw proposals." Stead Aff., Ex. D, p. 121. The Representative Assembly Process is set forth in Stead Affidavit, Exhibit H. Meetings of the Representative Assembly are posted publicly and open to the public. Stead Aff., ¶ 8.

Minn. Stat. § 128C.03 was adopted by the Legislature to ensure public notice of changes or additions to eligibility rules. Plaintiff has made no allegation that "proposed eligibility rules" have not been publicly noticed or subject to public hearings. To the contrary, Defendants MSHSL and Stead have submitted minutes from the November 7, 1991, public meeting of the Representative Assembly where the original version of Bylaw 206 was approved. Stead Aff., Ex. H; ¶ 22. The original language provided:

> In order to be eligible for regular season and MSHSL tournament competition, a student must be a bona fide undergraduate member of his or her school in good standing. A student . . . whose character or conduct violates the Student Code of Ethics is not in good standing and is ineligible for a period of time as determined *by the principal*.

Stead Aff., Ex. F (emphasis added). The Representative Assembly consists of three school representatives from each of the League's 16 Administrative Regions and the President of the Board of Directors. The Representative Assembly is the legislative body of the MSHSL, which meets annually to "consider all bylaw proposals . . . and to accept or reject them as a part of the Activity Bylaws of the League." Stead Aff., ¶ 8; *see also* Ex. D (MSHSL Constitution § 210.00 *et seq.*).   The meeting of the Representative

Assembly is posted publicly and is open to the public. Stead Aff., ¶ 8; *see also* Ex. H (describing the Representative Assembly process).

Accordingly, Plaintiff has not alleged facts sufficient to support its claim regarding Minn. Stat. § 128C.03 and Count Six must be dismissed.

## II.   THE COMPLAINT FAILS TO ALLEGE AN IMMINENT INJURY IN FACT THAT MAY BE REDRESSED BY PROSPECTIVE RELIEF IN EQUITY

Plaintiff's Complaint prays for an injunction, enjoining the MSHSL from prohibiting Plaintiff from participating in MSHSL activates.  In order to maintain a claim to prospective relief in equity, Plaintiff must have standing for such a claim.  If the plaintiff lacks standing, the Court lacks subject matter jurisdiction. *See Enright v. Lehmann*, 735 N.W.2d 326, 329 (Minn. 2007).  To have standing, the plaintiff must have an "injury in fact"-a harm that is both "concrete" and "actual or imminent, not conjectural or hypothetical."   *Hanson v. Woolston*, 701 N.W.2d 257, 262 (Minn. App. 2005) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S. Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) (quotation and citation omitted); *accord Twin Ports Convalescent, Inc. v. Minn. State Bd. of Health,* 257 N.W.2d 343, 346 (Minn. 1977).  A potential litigant must also demonstrate a fairly traceable connection between the alleged injury-in-fact and the defendant's alleged conduct and a substantial likelihood that the requested relief will remedy that injury-in-fact.  *Id*. (citing *Vt. Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 771, 120 S. Ct. 1858, 1861-62, 146 L.Ed.2d 836 (2000)). The Minnesota Supreme Court has long held that merely possible or hypothetical injury

is not enough to satisfy this standard.  *State v. Colsch,* 284 N.W.2d 839, 841-42 (Minn. 1979).

### Standing for Injunctive Relief

The Minnesota Supreme Court indicated the standing necessary for injunctive relief in *AMF Pinspotters v. Harkins Bowling, Inc.* when it held that an injunction will not issue to prevent *an imagined injury* which there is no reasonable ground to fear. *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961) (emphasis added) (citations omitted).  The threatened injury must be real and substantial.  *Id.*  The apprehension of injury must be well-grounded, which means that there is a *reasonable probability* that a real injury for which there is no adequate remedy at law will occur if the injunction is not granted.  *Marriage of Geske v. Marcolina*, 642 N.W.2d 62, 68 (Minn. App. 2002) (emphasis in original).  Injunctive relief should be awarded only in clear cases, reasonably free from doubt, and when necessary to prevent great and irreparable injury.  *AMF Pinspotters, Inc.*, 260 Minn. at 504, 110 N.W.2d at 351.  The remedy of an injunction looks only to the future; it cannot be invoked for the purpose of punishment for wrongful acts already committed.  *Minneapolis & St. L. Ry. Co. v. Pacific Gamble Robinson Co.*, 181 F.2d 812, 814 (8th Cir. 1950).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-496, 94 S. Ct. 669, 676 (1974).

*Procedural Standard*

A motion to dismiss for lack of subject matter jurisdiction may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *see also Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a factual challenge to jurisdiction, the Court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of the normal motion to dismiss for failure to state a claim standard. *See Titus*, 4 F.3d 590 at 593; *Osborn*, 918 F.2d at 729 n.6. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Osborn*, 918 F.2d at 730 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

In a facial challenge to jurisdiction, the Court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss. *See Osborn*, 918 F.2d at 729 n. 6. The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction. *See Titus*, 4 F.3d at 593 (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731-32 (11th Cir. 1982)); *Osborn*, 918 F.2d at 729 n.6.

Essentially, to make out a claim to standing for prospective relief in equity in the nature of a mandatory injunction, Plaintiff must allege facts that tend to show that the MSHSL is threatening Plaintiff's claimed legally protected interest to participate in extracurricular sports within Anoka-Hennepin.  As already noted, Plaintiff has failed to allege facts tending to show any involvement of the MSHSL whatsoever, even with regard to a retrospective injury.  The Complaint fails to come anywhere close to alleging that the MSHSL has threatened to visit a *future* injury in fact upon Plaintiff.  Therefore, Plaintiff's prayer for a mandatory injunction against the MSHSL must be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

The instant Complaint, at least regarding the allegations against the MSHSL, contains nothing more than a "the-defendant-unlawfully-harmed-me accusation."  The Complaint alleges in Count One that "Defendants acted with intent to violate T.L.'s constitutional rights . . . and deliberately deprived T.L. of his civil rights guaranteed by the Fourteenth Amendment to the United States Constitution by depriving him of his property interest in his athletics without resort to any due process." Compl., at ¶¶ 61-62. Plaintiff fails, however, to allege any involvement on the part of the MSHSL in any such alleged deprivation. The Complaint similarly alleges in Count Five that "defendants acted with intent to violate T.L.'s constitutional rights . . . [and] intentionally and deliberately deprived T.L. of his civil rights to due process" but again fails to allege facts showing any involvement whatsoever of the MSHSL in the alleged due process violation. Compl., at

¶¶ 88-89. Plaintiff has not even alleged facts that show the mere *possibility* of misconduct on the part of the MSHSL, to say nothing of stating a *plausible* claim for relief against the MSHSL.  As such, the claims against the MSHSL must be dismissed with prejudice.

Based upon the foregoing points and authorities, Defendants Minnesota State High School League and David Stead pray the Court dismiss the Complaint for failure to state a claim upon which relief can be granted, or alternatively, dismiss Plaintiff's prayer for prospective relief in equity for lack of subject matter jurisdiction.


Dated: October 30, 2013                    **KELLY & LEMMONS, P.A.**


                                           /s/ Kevin M. Beck
                                           Patrick J. Kelly (#54823)
                                           Kevin M. Beck (#389072)
                                           Joseph A. Kelly (#389356)
                                           223 Little Canada Rd, #200
                                           Little Canada, MN 55117
                                           (651) 224-3781
                                           F: (651) 223-8019

                                           *Attorneys for Defendants MSHSL*
                                           *and David Stead*